Good afternoon. The first district court is now in session. The Sixth Division, the Honorable Justice Mary L. McPherson presiding, case number 21-1600, Beth McCormack v. Veronica Walter. Good afternoon, gentlemen. As you likely know, you will each have 20 minutes aside. I'm going to ask you each to introduce yourselves. That doesn't eat into your time. Tell us who you're representing. And for the appellant, please tell us if you want to reserve any of that 20 minutes for rebuttal. So beginning with the appellant, let us know who you are and who you represent. Very good. Justice, good afternoon. I'm Jerome Penderski Jr. And I represent the appellant respondent, Veronica Walter. And I would like to reserve five minutes, if I may, for rebuttal. Absolutely. Thank you. Counsel? Good afternoon. Jonathan Morton for the appellee, Beth McCormack. I'm also here with my co-counsel, Lainey Flores, who will be arguing as well. Okay. How have you divided your time? I will be arguing for approximately the first 10 to 12 minutes with Ms. Flores, with the remaining 8 to 10 minutes. Okay. Does anyone have any objection to that, either in court or counsel? I do not, Judge. All right. That will be fine. All right. Whenever you're ready, Mr. Penderski, you may begin. Before you begin, let me just say, although we do time it, if you're in the middle of something or we've eaten up all your time asking questions, we will let you finish your point. So don't be anxious about the time. We've also, of course, read your briefs. Very good, Justice. Thank you. Good. As I mentioned, I represent Veronica Walter. My client was trained as an emergency room physician and began her career in 1991. Due to an unfortunate accident on a golf course in 1994, her career was cut short. She had a physical injury that no longer allowed her to practice medicine. My client has been described as a very intelligent woman. She's funny, compassionate, combative, many times obstinate as well. But the one thing she is not is she is not a person with a disability. That's what brings us here this afternoon to argue that point, because that obviously is something that we disagree with the trial court's holding. That found that my client was a person with a disability. Just a quick question, though. Isn't the guardian only appointed for the specific reason of finalizing the divorce case? It is. That is true, Justice. It is the at the end of the case, though. The court found my client was a person with a disability. The guardianship, the remedy was limited to to just appointing someone to resolve the matrimonial case, which is also pending in a different division of the circuit court. And still pending, counsel? I'm sorry. Is the divorce case still pending? It is, ma'am. It is because the case was frozen in October of 2019 when McCormick, the petitioner herein, was directed to file this action. My client was barred from having any other attorneys file any appearance in that proceeding. Though even though I tried to do so, I have not been able to participate. So the case simply has been languishing since then. But as I was saying that we do not believe that the proofs that were established in trial meet the burden of proof, of clear and convincing evidence that my client is a person with a disability. You know, many of us use the term disability loosely. You know, we use it in PI cases, insurance cases. It's a it's a term that has many different definitions. But it's important that we keep in mind that we have a unique definitions established by statute as to whether or not someone is a person with a disability for purposes of this act and the potential appointment of a guardian. Our laws require that the petitioner established by clear and convincing evidence that my client suffers from a diagnosable mental illness. And then secondly, by clear and convincing evidence, there has to be proof that this mental illness affects my client's ability to manage her personal or financial affairs. And it is our position, as we've argued at length in the briefs, that the requisite level of proof simply was never established during the course of the trial. Now, clearly, I have to admit that the petitioner did have a psychiatrist testify, Dr. Jeffrey Shaw, who was actually appointed as an independent medical examiner in this case over our objection. He did offer an opinion that says that Veronica Walters suffers from a mental illness called delusional disorder. And actually, both of the medical experts agree on what the physical manifestation of this of this disorder is. It requires a fixed false belief in a fact that is objectively untrue. And Dr. Shaw, his opinion is based upon his interview with my client that took place, I think, was September 2020, where he alleges that my client made a statement to him that that Dr. And Dr. Shaw graphs on that statement, even though we've disputed it in its context, as evidence of the presence of a delusion. And he opines further that that delusion of not being legally married to Joseph Tanner is it will always affect her cognitive abilities to be able to actively manage her disillusioned proceeding. We disagree with with Dr. Shaw's opinions. And we also disagree with with even the methodology by which he got there. We've actually had our own medical expert testify, Dr. Augmento, who spent a fair amount of time with Miss Walter during her interview. Much of the facts that actually exist in all the briefs in this case actually came out of the extensive interview that Dr. I'm going to stop for just a moment because I understand what you're saying. But, you know, we're the appellate court, and we really have to defer, do we not, to the trial court for these witnesses. And as you point out, there are two witnesses with two different opinions. The trial court made a decision we might if we heard them agree with your assessment. But we're not entitled to reverse the trial court based on the fact that we might have reached a different conclusion. It has to be against the manifest way to the evidence. And that's a very, very high standard. So I'm wondering if you could speak to that standard rather than the fact that it could have gone the other way. Well, judge, and I appreciate that. And maybe I'm getting to it in an artful fashion. But I agree, it is a manifest way of the evidence that we have to establish that the decision of the trial court was arbitrary, unreasonable, or not based on the record. And as I was mentioning, Dr. Argumento tells us that if Dr. Shaw's opinion is to be believed, it requires that this fixed false belief be constant and unwavering. And under his theory, as explained by Dr. Argumento, who is actually a treating psychiatrist. But that standard of unwavering false belief, where does that come from? It's not in the statute. Right, well, it's not. It's within the field of medicine. Both of the doctors agree that to diagnose a person with delusional disorder, it requires a fixed false belief and a fact that's not objectively true. Both of the doctors agree that that is the medical standard by which the mental health diagnosis can be reached. But what Dr. Argumento tells us, and she's the only one who's actually treated these people based on her testimony, that this belief has to be ongoing and constant. Which would mean that in this case, Ms. Walters would have to deny the existence of her marriage in every conversation she ever had. She actually talked to Dr. Shaw about her marriage. She talked to Dr. Argumento about her marriage. She testified in open court that she's married to Joseph Tenor and that she is going through a divorce proceeding. What it does is medically. So you don't believe that it's reasonable for a doctor to find that there's a problem if in some conversations she believes she's married and in others she doesn't believe she's married? I would argue, based upon the medical evidence that was presented, that to sustain this medical diagnosis, it has to be an ongoing and unwavering belief in a false fact. That is the testimony of a practicing physician who actually deals with individuals. She's treated them who have the diagnosis of delusional behavior. But even just from a basic principle, ongoing doesn't mean that it has to be every day. If it's every Saturday, it's ongoing. If it's every Sunday, she believes that it's ongoing. We don't want to get too much into that. But it's our case, we've explained in the briefs, and as I argued this afternoon to you, that because of the lack of a constant statement by Ms. Walters that she's not married, in fact, there's only one statement that's even a part of the record from what Dr. Shaw told us. There is no other subsequent statements, Justice, with regards to Ms. Walter ever denying that she's married to Joseph Tenor, nor that she's involved in a case. There's one single statement. It's not a question of, as you've suggested, that on a Saturday she says one thing and on a Sunday she says another. In every instance where she's been asked to describe the state of her relationship with Joe, she testifies that, yes, I'm married to Mr. Tenor, and we're going through a divorce case. And that's a critical element that's missing from Dr. Shaw's testimony. And for his foundation, for his diagnosis, the record simply does not support that a mental illness exists in this particular case. Coming back to Justice Nicklaus, what we have here, though, is we have competing testimony from two doctors, one who believe that she has a disability, one believe that she doesn't. And the trial court judge has weighed that testimony, made a decision. And even though that decision has to be made based upon clear and convincing evidence, that's the standard for the trial court judge. But for us, the standard is whether or not it's against the manifest weight of the evidence. So you're suggesting that we should find it's against the manifest weight of the evidence because of some standard that the doctors use, and the doctors didn't use that standard the same way. Well, Judge, there is only one medical standard to be used for diagnosing a delusional behavior. I realize that. That's what I said. The doctors just didn't apply it the same way. There's one standard, but you believe one doctor didn't apply that standard correctly. That's what you believe, correct? I do. I do, Judge. And I appreciate that, Justice. And what I'm arguing is that that standard is so critical to being able to make the decision that Judge Outlaw did to adopt one medical opinion and effectively disregard the other. You can't do that in a case like this when the standard of proof is so high. Beyond that, it's our position that based upon the actual factual testimony that this delusional behavior simply was never proven. There has to be proof of a delusion. And none of the medical experts other than Dr. Shaw, in his one instance with his interview with my client, provides any factual basis for this medical diagnosis. And also, none of the lay witnesses provide any evidence to support Dr. Shaw's diagnosis of delusional behavior. Not Mr. Tenner, not Ms. DeConstanza, and not the petitioner, Beth McCormick. None of them provide any factual evidence that there was ever any delusional behavior on the part of Beth McCormick. Joe Tenner himself has testified as the husband. You know, he believes his wife is fully competent to manage her own personal financial affairs. Ms. DeConstanza only had one meeting with my client, and she found her to be a very intelligent and conversant individual. And they discussed the marriage and the disillusion of marriage action. So there was none of this delusional behavior that was ever present there. And even Ms. McCormick herself could never testify to any actual evidence of any delusional behavior where Ms. Walter in any instance ever denied the existence of her marriage. Justice, we only have one instance that supports this entire foundation under which this case comes to you this afternoon of one instance of where someone says that she said that I am not married to Joseph Tenner. And we don't believe that that can be used as the pillar to support this case, or at least the medical evidence. Because that's the medical evidence under the statute. There has to be a – it's not a question of disability. That's for the judge to decide. The issue is have they proven by clear and convincing evidence that my client suffers from a mental illness. That's the predicate issue. And then even after we find a medical – we find a diagnosis that there is a mental health issue, then we look to see whether or not that mental illness is impacting on my client's ability to manage her financial and personal affairs. And that's just a simple fact. Before you run completely out of time because you're getting close, I'd like to move away from this factual finding. Please. To the issue of her request after the factual finding was made to appoint her brother as the guardian. Sure. Judge, I would be happy to. You know, as we've noted in the briefs and as we argued before the trial court, we believe that my client was entitled by statute to provide a recommendation. It's not the final decision, but it is a recommendation to the court. But keep in mind, she's supposed to make that recommendation. That's what's confusing me. The trial court seemed to think it came too late. Well, it did. And that's it. You're absolutely right. That is what the decision of the trial court is. And we've argued to the trial court that there's nothing in the statute that requires my client to make a pretrial filing of a pretrial nomination of a prospective guardian. There's nothing in the statute. The statute simply says that before the appointment of a guardian, there should be given due preference or due regard for the preferences expressed by the respondent. In this case, it would be Veronica Walter. But the statute requires it to be done beforehand. In your view, the trial court should have had the trial. Once it ruled, if it was going to rule that she was a person with a disability in need of a guardian, then it should have opened it up for her to make a proposal or a proposed appointment. Is that your... I do. That is exactly our position, Judge. And we believe that that comports with the statute. But was that request... Didn't the trial court present that earlier in the case and there were no nominations made? And then subsequently, after the guardian was appointed, then she suggested to the trial court that she would like to nominate her own guardian. Is that correct? That is not correct. No, no. There was no opportunities afforded by the court prior to trial. At the end of the decision by Judge Outlaw, he gave us his decision and his ruling regarding the merits of the case. And then he was ready to move immediately to appoint the suggested guardian. And that's where I raised the issue at that point in time that my client is entitled to make a recommendation to the court for the court's consideration. And that was done on the day when Judge Outlaw made his decision. He argued with me, but he also granted me leave to have Ms. Walter make a nomination. And then we held a subsequent hearing on that about a week later, if my memory serves me correctly. And the judge at that time said that it was too late. That's exactly what he said, that because he had already appointed a guardian. He gave me leave to appoint or nominate a guardian. But at the same time, back in late November, he also appointed the guardian at the same time. And I'm suggesting the court should not have appointed the guardian on the date of its decision. It should have allowed us to file our nomination and then it should have allowed our nomination to stand along with the petitioners. And that's the time when that when that final decision should have been made.  And in addition to stating that it was too late, he also made a finding that he thought that the brother would basically do whatever Ms. Walter wanted him to do. Isn't that correct? There was a there was a statement to that effect. I'm not sure if it was specifically a finding justice, but he did. Principally, he did rule that based upon his prior ruling by a prior appointment, I should say, of a guardian that he felt his hands were actually tied. Was there any evidence taken at this hearing? Was it an evidentiary hearing of any kind? Did you hear from the brother? Was there was he was there any evidence as to whether the brother would be a good guardian? The brother, the brother was allowed to testify or at least he had a conversation with the court. I'm not sure whether or not he was sworn under oath or not, justice, to be very honest with you. But he did explain his relationship to his sister. He understood the role of a guardian, at least in this limited capacity. And he was prepared to undertake those responsibilities for for the court and for his sister if he was so appointed. That was the sum and substance of the conversation. You don't know if he was sworn as a witness or cross examined or anything like that. Justice, I really can't recall offhand. I know that there was that conversation. I know that there's a transcript of it. I believe it's a part of the record in this proceeding. The same trial date that the court made the ruling that he was not going to appoint the brother. It's that transcript. Is that what you're referring to? That's exactly correct. So let me ask you this. In the briefs, there's a whole lot of writing where there's no case law being cited. So it seems like this is just running towards this is all about the facts of this case. What I want to ask you is give us two reasons that you have your two best reasons why you believe that we should either reverse the court or remand this back to the trial court. Give us your two strongest reasons for that. Well, the first reason is that we honestly believe that an objective review of the court record will show that it is against the manifest weight of the evidence regarding the decision that my client is a person with a disability. The second and other reason that has nothing to do with the facts of the case, but has to do with the subject matter jurisdiction issue that we've raised, that it is our position that the subject matter jurisdiction issue was never properly resolved under the statute. We raised it before the first trial, and the judge of outlaw agreed with me. Try another argument. Give me your third one, if that's your second one. Well, the third argument goes to whether or not this proceeding should have ever been started in the first place. We've raised the issues as to whether or not Beth McCormick, as a guardian ad litem who was appointed in the matrimonial case, had the legal authority to even pursue this action. We've provided significant authority that that order was... Well, why wouldn't she, though? She's a reputable person. That's all that's required. She's been a lawyer for 29 years. She's been a guardian for 20 years. She's never been convicted of a crime. She's mentally sound. Why would she not have the authority? Give me your fourth argument, then. But, Judge, it's an important argument, though. I've got to touch base with the fact that she didn't pursue this as just an interested person. She pursued it solely and only as the guardian ad litem under a court order. I'm the domestic relations judge, and I want to hear your fourth argument. All right, good. Well, Judge, the fourth argument in this case has to do with... Why we should reverse or remain. Either one. Well, it would be the reverse on the issue of the summary judgment. We had raised the issue. Yeah, but summary judgment merges. Give me your fifth, then, because summary judgment... When summary judgment is denied, it merges into the judgment of the court. Now, come on, we all know that. Let's give me your next argument. Okay, well, Judge, it goes back to the record in this case. The record is woefully deficient to support a finding that she is a person with a disability. There is not proof that she has a mental illness, nor that a mental illness affects her... That's going back to your first point, manifest weight of the evidence, though, isn't it? It is, because that still is really our principal issue. Let me just go where I was hoping you were going to go. Justice Cooper just raised something about the situation, and Justice Johnson spoke to it as well, about the brother having been nominated to serve as the guardian. And the court kind of went past that and dealt with it by saying that he really couldn't do it. And then, just as Johnson pointed out, that, well, he didn't necessarily say he couldn't do it. He said that the brother was not the right person, that the brother would just go along. What about that? Well, I can say this. The fact that there's no evidence in the record that would disqualify Mr. Walter from being the guardian. He also meets all the statutory requirements. He knows his sister well. He's actually in a unique position to help her finalize her marriage, other than some type of a corporate guardian that's being proposed, that he's probably better suited. There's no proof in this record that he would not serve as an appropriate guardian in the limited case, or the limited fashion in which Judge Outlaw fashioned his remedy. In fact, I would suggest that he would be a better person, because he has a better understanding of the person that he's being asked to represent. Now, he was hard to find. So is he still in contact with his sister? I don't think he was hard to find. I mean, his name and address were attached to the petition. Obviously, the petitioner did not use any due diligence to go and seek out the other family members that were all known. She had nine brothers and sisters, right? She did, right. She had nine brothers and sisters. One, I believe, passed on, so that would leave us with seven. And the petitioner finally did, in a second amended pleading, list the seven. There were two addresses noted, but they made no effort to go find the other ones. We don't know where they are, but a skip tracer could have found them. I mean, we do that for airships. There's no reason why the petitioner could not have expended some resources to find these people and to make sure that they received proper notice, as the statute requires. They were dead bodies. They knew where three of them worked, correct? I'm sorry, Justice? And they knew where three of them worked. That was the testimony in the record. That's correct. All right. Unless there are more questions, you are well out of time. I appreciate the time the panel has given me this morning or this afternoon, especially the extra time. Thank you for your consideration. And you still have five minutes. All right. Counsel. Good afternoon, counsel. It may please the court. My name is Jonathan Morton. I, along with my co-counsel, Amy Flores, represent Beth McCormick, petitioner in the guardianship matter, court-appointed guardian ad litem in the divorce matter, and appellee here today. There were a litany of issues raised in appellant's brief on appeal. We've distilled the issues as follows. And to address respondent's sort of second-best argument pursuant to Justice Walker's question, as well as respondent's sort of final argument regarding notice, I will be addressing those issues first, and Ms. Flores will address the evidentiary issues at the trial court, as well as the respondent's right to nominate. The petitioner and the trial court recognize that guardianship is a drastic remedy that removes the respondent's rights and replaces them instead with the substitute judgment of the court. To that extent, the trial court and Ms. McCormick fashioned the most narrowly tailored guardianship appropriate for the respondent, that which the only power the limited guardian has was to enter into a divorce on the respondent's behalf, a resolution that nearly every party in the respondent's parallel proceedings in the divorce court and in the probate division believe was in the respondent's best interest. The trial court should be affirmed for three primary reasons. As I said, first, Ms. McCormick had standing to bring this petition in the first place, despite the argument that her appointment was inappropriate at the divorce proceeding. Secondarily, the trial court had subject matter jurisdiction to adjudicate disability. And third, the trial court was best suited to weigh the evidence and the credibility of the witnesses when it sat to hear those issues. As an initial threshold matter, many of respondents' arguments were raised for the first time here on appeal without citation to authority or precedent. And for those reasons, many of those arguments were forfeited at the trial court level, as will be discussed further by argument here today. Moving to my first point, Ms. McCormick had standing to bring the guardianship petition, and respondents' arguments that she didn't have standing failed both procedurally and substantively for three primary reasons. One, no final appealable order was entered under 304A, and an appeal under Supreme Court Rule 304B is inappropriate because the guardianship, because the appeal arises out of Ms. McCormick's appointment in the divorce proceeding, not out of the guardianship proceeding from which this appeal was taken. Second, the argument that Ms. McCormick lacked standing was forfeited at the trial court level, where she had the opportunity to file a 2619 motion to dismiss if her argument was, in fact, that Ms. McCormick lacked standing, given her appointment in the divorce case. Pursuant to this first district and the second division in the middle of… One second. One second. Coming back to the statement you just made, you said that because the guardianship was actually made in the domestic relations case and not in the case that's currently on appeal, that Mr. Penderski has no standing here. Well, so you're saying then there was no need for your client to file an action in the probate court in the first place. Is that what you're saying? No. Okay. That's not what you're saying. No, Justice, and I apologize if I misspoke. My point was that it seems, though it's not apparent from the appellant's brief, that their argument, although they don't say it, is with regard to Ms. McCormick's standing by virtue of her appointment in the divorce proceeding. Okay. I didn't make it that way, but that's okay. You can move on. I understand what you're saying. I just didn't read his brief that way. Certainly. Go ahead. You can continue on. Certainly, Judge. So with regard to the forfeiture of this argument at the trial court level, the issue of standing was raised for the first time on appeal. And as this court knows, pursuant to its decision in the Second Division, the Mivelez case, it's the respondent's duty to both plead and prove lack of standing. And, of course, answering a complaint waives an argument over the sufficiency thereof. And failure to object to standing at the trial court acts as a forfeiture of that argument. Here, not only did the respondent fail to plead or otherwise object to standing, the record reflects on pages 74 and 449, the respondent's counsel affirmatively considered some sort of motion with regard to the standing issue and specifically chose not to file a motion or pleading for whatever reason. Further, page 120 of the record reflects that instead of taking argument on this point, respondent instead tries to elicit trial testimony from Beth McCormick regarding her initial appointment in the divorce case, which is obviously an inappropriate way to raise an argument over a legal issue, instead trying to elicit trial testimony. In fact, the record is clear that no pleadings were filed with regard to the standing issue. And, in fact, both the initial petition for guardianship and the first amended petition for guardianship were answered, which forfeits any argument that the standing issue, which forfeited the standing issue at the trial court. And finally, Justice Walker, as you pointed out, even if the respondent is able to overcome these procedural hurdles regarding forfeiture, in any event, 755 ILCS 511A3 allows any reputable person to petition for guardianship. It further allows the court to move for guardianship on its own motion. And the only evidence we have on whether Ms. McCormick is a reputable person is her own trial testimony on the record at page 108 and the allusion, of course, that we can take from the divorce court's appointment for her as a guardian ad litem. And I think more to the issue of whether that appointment to the respondent's argument that that initial appointment was improper and that it was in that capacity that the guardianship petition was filed, the Illinois Supreme Court held in In re Steinfeld that those issues are simply procedural in nature and not jurisdictional. In the Steinfeld case, a brother of the adult disabled person was noticed at the original petition, but the original petition was not accompanied by a physician's report and no GAL was appointed to represent the respondent in that petition. Later, a 214-01 motion was filed to vacate the judgment based on those deficiencies. And the court expressly stated that although we strongly disapprove of the propunctory manner in which the trial judge conducted the disability and guardianship proceeding in the case at VAR and the court's disregard of several of the statutory procedures which are designed for the protection of persons alleged to be disabled, those requirements are procedural and not jurisdictional, which goes back to the original point that it does not matter in what capacity Ms. McCormick brought the petition because at the end of the day, she is a reputable person. Next, despite the respondent's arguments that the trial court lacked subject matter jurisdiction for failure to notice some, but not all, of the respondent's siblings, the trial court did in fact have jurisdiction to adjudicate disability. The respondent ignores both the statute... Counsel, do you agree that procedural notice requirements are the equivalent of jurisdictional requirements? The case law, Your Honor, goes sort of both ways on that, depending on who is on the exhibit. So respondent relies on N. Ray Sardini for their proposition, which says to the extent under 755 ILCS 511A-8E, that is, who must be included on the petition, the closest relatives who are known or reasonably ascertainable under the statute must be included on the petition. Section 10-F of that same guardianship act says that those individuals who are known or reasonably ascertainable must be noticed. 10-F is silent as to what happens if those individuals aren't known or reasonably ascertainable, which the Sardini decision initially ruled upon. In that case, the closest relatives were in fact listed on the petition for guardianship. However, they were not noticed of the original guardianship petition, and the appellate division then said that the order adjudicating disability must be vacated. Counsel, wouldn't you agree that once your client located the place of employment for those three siblings that they were reasonably ascertainable? Well, I think the question goes to the burden that is placed on the petitioner and the guardian ad litem and the probate division on what then becomes reasonably ascertainable. Is she to go and just stand outside of the place of employment when we know, via Kenneth Walter's testimony on page 55 of the record, that their addresses and contact information was being intentionally shielded from the guardian ad litem and the probate division and the petitioner? The question is, then to what extent does she have to go to determine what is reasonably ascertainable? And even if that is true, Judge, that she was to go and wait outside their place of employment, for example, the Middle East Court was also very clear that the cause of action for failure to obtain notice arises on behalf of the person who doesn't get notice, not the respondent themselves. And this nuance was not lost on the respondent. Her counsel specifically states on page 29 of the record that it is that in his objection to the initial trial moving forward, he specifically noted that they needed to be noticed in case it was the siblings who wanted to bring a motion, not the respondent herself. And that that aligns perfectly with the Middle East decision that says the cause of action for failure of notice arises on behalf of the siblings. Again, this case more closely mirrors Middle East, which just so happens happened under the same trial court from which this appeal arises. In that case, the errors, the putative errors of the alleged disabled person were not noticed of the original adjudication proceeding because they were not known or reasonably ascertainable. They were somewhat attenuated errors. Then subsequently, the trial court in that case allowed an amendment to the ward's estate plan of which, again, those errors were not noticed. Subsequently, they were made aware of it. They filed a 214-01 motion to vacate, which was dismissed at the trial court level because those errors were not included. Those errors were not known or reasonably ascertainable and were not included on the petition. Thus, the trial court was not without jurisdiction to move forward on the adjudication proceeding. Again, this case more closely mirrors Mibelez than it does Sodini because the siblings of the respondent here, addresses were not known and they were not included on the petition. Therefore, under 10F of the Guardianship Act, they were not required to be given notice. Instead, just as in Mibelez, the same trial judge allowed notice to be given by publication, which was made. Therefore, the trial court was not without jurisdiction to adjudicate disability. For these reasons, the trial court be affirmed on both Ms. McCormick's standing and the jurisdictional issue. With that, I thank you and will leave the rest of the argument to my co-counsel, Ms. Flores. Thank you. Good afternoon, Justices. Lainey Flores on behalf of the petitioner. May it please the Court. As an initial threshold matter, there were no post-trial motions filed on any of the trial court's evidentiary findings. Instead, the respondent asks that this court review the evidentiary findings for the first time. On this basis alone, the trial court's decision should be affirmed. Despite this, the respondent has argued that the crux of her appeal is the finding of a disability. This finding of a disability is a factual finding, as this court has addressed. The trial court heard, after five days of trial, from two experts, three lay witnesses, and observed the respondent herself during her testimony at trial. The trial court's finding of a disability was supported by the testimony and report of Dr. Shaw, who is a board-certified psychiatrist and neurologist, and who the trial court found credentialed by his vast experience in guardianship cases and knowledge of what is needed for the appointment of a guardian, as well as the requirements under the Probate Act for a finding of a disability. And the trial court found Dr. Shaw's assessment of the respondent's lack of executive functioning being indicative of a psychiatric condition, which impairs her ability to make well-reasoned decisions and, importantly, to advocate for herself. What do you say in response to the argument opposing counsel made about a fixed false belief being a requirement? Justice McBeth, I was just about to address that, in that the trial court's finding was not whether or not the respondent has delusional disorder. It was whether she suffers from a mental illness that impairs her ability to make well-reasoned decisions in the divorce proceedings, and whether she's able to advocate in those divorce proceedings. And the basis of the finding of a disability was after all of the testimony and evidence that the trial court considered, and that the trial court went out of the way to outline in its ruling and assigned weight and credibility to each piece of evidence that it considered. It was not solely based on Dr. Shaw's opinion that the respondent suffers from delusional disorder. And does there have to be a specific diagnosis in order to find somebody has a disability? No, Justice. The statute requires that there is a finding in this situation of a mental illness. Thank you. The last respondent argues that she was not afforded a meaningful opportunity to nominate a guardian. The respondent was given over two years to nominate a guardian. But counsel, why would she want to do that before a finding had been made that she needed a guardian? To nominate a guardian, there's a presumption that you're conceding that you need a guardian. Justice McFarland, I would disagree. The initial guardianship petition has a proposed guardian named. After a petition is filed, the court, many times as it did here, appoints a guardianate item, whose role it is, per statute, to meet with the individual, tell them about the guardianship, ask them if they're okay with the proposed guardian, and specifically ask them, if you were to be appointed as a guardian, who would you want as a guardian? Where in the record does it reflect that that occurred? It is, on our record, R-566, where the GALD Costanza, in March 2020, met with the respondent in her counsel's office, and specifically asked her who she would name as a guardian, if the court found that she needed one. And the response? The response is what? She refused to answer the question. Okay. Also, her attorney, the respondent's attorney, filed two separate answers to two amended petitions for guardianship, and never pled in the alternative, who she would want as a guardian. The rules of civil procedure provide for pleading in the alternative for these exact situations. You agree, do you not, that the trial court felt, even though it allowed counsel to file a petition for appointment of the brother, that the trial court felt it had no real authority to appoint a new guardian once it had appointed one guardian. In fact, the trial court said to counsel, I can only do this if the guardian I've already appointed agrees to resign. Correct, Justice, because the respondent's only legal recourse after the court appointed a guardian was to file a citation to remove the guardian. But it shouldn't be lost on us that the respondent could have filed her own cross petition, could have pled in the alternative, and would have been given an opportunity throughout these five days of trial to present evidence as to who the best guardian would be. Do you agree that there was no testimony from the brother at the hearing where the court refused to appoint him? He never testified. I just read that hearing. He never testified. He was not sworn in and he was not cross examined. He simply gave his opinion to the court of what his role would be and how he would handle his appointment. But the court never made a finding that he would be too influenced by his sister. There was no evidence of that. Is that correct? Correct, Justice. However, as a matter of public policy, if we allow individuals who are objecting to guardianship to nominate a guardian after there is an order appointing a guardian, we would have individuals who the court has found lack decision to make decisions for themselves without a decision maker, while the nomination is later litigated. Not to mention that the evidence that would be presented during the incapacity proceedings would many times and is many times the same evidence that's presented to the court in these nomination hearings. Because what we're looking for is if the person has a disability, and if there's a disability, who is going to be the best decision maker for that person. I'm sorry, I don't see the problem with that. Explain to me why that's a problem. So, this situation is a bit unique, right, because the divorce proceedings can be stayed. They have to be stayed for three years, apparently. But if we allow someone to not have a decision maker, generally, we would have people who a court has said cannot make medical decisions for themselves, cannot understand a contract, cannot find their own housing, cannot manage a bank account without a decision maker, while the nomination is subsequently litigated. And it's a perfect strategy for an objecting respondent to do that so that they can stay the guardianship as long as they want. Well, no, because ultimately it's the court's decision as to who to appoint. It's not the person who's been found to be in need of a guardian. But why not at that point, allow the person to say, okay, if you think I need a guardian here, I want you to consider this person as my guardian. I think I would be more cooperative and able to work with this person. The respondent is given that opportunity because they can plead in the alternative who they would want as a guardian if one is appointed. And the guardian at light of specific role is to specifically act, not only if they object to the guardianship, not only if they object to the named guardian, but if there's someone they would prefer as guardian, if the court finds that one is appointed for them. And that does not concede disability. That question asks the person, if you were to become disabled, who would you want? So the court can hear that. Also, throughout these two years, the respondent had the opportunity, or generally we should say, the respondent is given the opportunity to file a cross petition. The respondent also receives a notice of rights when they have services, summons is served on them, which outlines their right to tell the court who they would want as a guardian, if a guardian were appointed for them. That exact language is in the statute and in the notice of rights. I'm sorry, if you can't, that's fine. But can you give me the statute of rights? To the notice of rights? That you have the right to nominate who you want as a guardian and that you've given that notice at the outset. I don't have it right in front of me, but it is in the procedures prior to adjudication of disability. Okay. So you said that when she asked to, when Ms. Walters asked to have her brother serve as the guardian, and the court said, I can't do that, because in order to do that, I would have to remove the guardian that's already in place. Can you just help us understand a little bit how that dialogue went, if you're familiar with it? Yes, Justice, I was there. And the court was trying to extend to the respondent the opportunity that perhaps the petitioner would agree to this other guardian. But the only legal recourse, once the petitioner did not agree, was for them to file a citation to discover. I'm sorry, a citation to remove. And so the trial court held the subsequent hearing to give the due consideration her nomination should be afforded to see if there was anything else that would come from that, so that the trial court could properly even consider the new guardian. And it was unable to. Why was the trial court unable to? Just clarify that. Because it had already appointed a guardian. So are you telling us then that the trial court believed that the trial judge didn't have the authority to appoint a new guardian? Is that what you're telling us? Correct. The trial judge believed that the trial judge did not have the authority. Is that what you're telling us? Yes. That sounds like an abuse of discretion to me. The trial court had already entered the order appointing the guardian. That doesn't matter. The trial judge has a lot of discretion there. But go ahead, I'll let you finish. I'm just just saying that that poses some concern. I want to give you a chance to argue it because I hate the case to get decided on that. You have a chance to respond to what I just said, but that sounds like an abuse of discretion to me. Tell me why it's not. Because you may not be aware of this. But when a trial judge does something. And she or he believes that they don't have a right to change what they've already done. Or if they if there's if counsel is asking the trial judge to rule a certain way, and the judge says, well, I can't do that. I don't have the authority to rule that way. And that's not a correct statement. If that's not a correct statement, such that the trial judge does have the authority, then the trial judge has just abused her or his discretion. And so I want to give you a chance to respond to that because I hate this case to fall on that. You haven't had a chance to respond. Yes, justice. The trial court was not the trial court was correct in saying it did not have the authority to change the guardian at that point, because the probate act contemplates the removal of guardians and number 10 of the section, which is 755 ILCS five slash 23 three is the respondent could have filed a citation to remove brought that before the judge after a cross petition was filed because Kenneth Walker was aware of these proceedings for at least a year and was given notice and had the opportunity to file a cross petition and had an opportunity to talk to his sister about doing this, and no one mentioned it until exactly when the judge said I'm appointing our in our guardianship, the respondent raises for the first time that she would like to nominate an alternate guardian, and I would argue that the rules of civil procedure, give everyone the opportunity to admit or to plead in the alternative without sacrificing or conceding their point. I'm just so I understand, is it your position that that she could have done this app at the after the court already said I can't do anything. That's when she should have filed a citation to remove the guardian was that your position.  Did the court the court basic up that to her though. That was the court did the court specifically told the respondent that at that point what she would need to do is follow citation to remove this respondent has not done that, and instead she appeals. The citation, we may have a different result. So the judges see that did happen off the record. I read the transcript I don't see any suggestion from the trial court did it happen off the record. No, it was on the record. And during the nomination hearing that the court did suggest that to her. Okay, go ahead. Johnson I apologize. So the judges statement that his hands were tied was based on the fact that there was no pleading or motion before him, asking him to to appoint a different guardian. Is that correct, correct justice, because at the time that the judge said his hands were tied. The only thing he had before him was a petition nominating or in our guardianship. He had nothing else that he could rule on if he would have had the nomination. Prior to the trial, simply saying, I don't think I need a guardian, but if I were to need one, because I got in a car accident tomorrow. I want my brother to be the person who helps me. That's what's anticipated under the statute. When it asks who you would want as a guardian, if the court appoints one for you. But the judge have so respond to appointed another guardian. No, the court could have responded began the proceedings of guardianship but not made its own nomination. Practically what typically will happen is if the court believes that there may be a more appropriate guardian, they may ask the gal to investigate and perhaps petition for that. But we gave Kenneth Walker, notice, the respondent was very well aware of these of what was going on that we were asking for a guardian to be appointed the guardianship petitions were invented to change guardians, and she was specifically asked numerous times who she would want for a guardian, if a guardian was appointed for her, and she refused to answer the question. Regarding judge outlaws statements on during the nomination hearing, I can refer justices to record to our 50s are 577 of the record. Thank you. Go ahead, we have a lot of your time make your final point, you are out of time but. Yes, justice. The respondent asked that this court reweigh the evidence presented to the trial. Because she wants a second bite of the apple and disagrees with the trial court's decision. For the following reasons, we ask that you affirm the trial court's decision. One, the petitioner has standing to file the guardianship petition to trial court had jurisdiction to adjudicate disability. Three, the trial courts evidentiary findings were not against the manifesto to the evidence, and for the trial court did not abuse its discretion and finding that the nomination was untimely. Thank you. Thank you. Any questions I'm sorry before she's down from anybody else we can. No, thank you. Good judge I will in the next five minutes try to address these issues, because first and foremost, before you address the issues, Mr. Can you just let me know where is it correct Council says that there were no post trial motions filed is that a correct statement that that would be a correct statement other other than the, the request for nomination but there were no other post trial motions right and I know you didn't try this case and you weren't there for it. I know I did try I did try the case right there. Well, my question is going to be then the rules are pretty clear and they have been for a long time that in the, that you're supposed to give the trial judge an opportunity to correct mistakes, and that's done with a post trial motion. And if there are no post trial motions, then we're, we're reviewing something that the trial judge never had an opportunity to review, does that help me with that justice, we're not arguing that job law made a factual mistake or that there was some error in the record factually, we're arguing that his collectively that his decision is against the manifest way to the evidence that he was finding the form in a post trial motion that what you said. No, no, not at all. I mean he made his decision and we're bringing that on appeal. I mean there's no new facts. He didn't misinterpret the fact he just, we believe that that it globally, his decision is unreasonable. His decision does not reflect the record that is before him, and specifically I guess just justice leads me to the one comment that under the statute. It's not a question of finding that someone suffers from some kind of a mental illness, and that just saying that is justification for finding a disability, there has to be a clearly defined mental illness. We don't just say you are mentally ill, there has to be a medical basis for that before we get to the legal consideration, and we've argued throughout this case that there is no factual basis from the record that was presented that would support by clear and convincing evidence that my client suffers from the only diagnosis that was suggested and that is delusional disorder. Now beyond that, just in the few moments I have left, we did raise in our answer to the to the first amended complaint, the standing of Beth McCormick to act we raise that specifically in the pleadings. I know that councils have suggested that was never raised in the pleading, you'll see that it is in the amended complaint, it was raised as a as a specific issue, because we are the crux of the argument regarding Beth McCormick is simply that the order in the matrimonial court is void, and we have the right to collaterally attack that anywhere. With regards to the cross petition that's being suggested here. Finally, a cross petition would require the my client suggest to the court that she is mentally ill and in need of a guardian and is appointing or suggesting the appointment of a different guardian. That is the only means by which a cross petition could be filed the my client chose not to file any because she stands on the defense that she is not mentally ill that's why there was no cross petitions filed, but there's nothing in the statute that bars us from the moment in time he made his decision, he could have clearly waited five days and allowed us to file our nomination, and then conduct the hearing that he did in determining whether Ken Walter should be the guardian, or the R&R organization. There was just a procedurally there's nothing wrong with that and that comports with the statute. Beyond that, the subject matter jurisdiction argument that's raised by the petitioners is simply wrong. The case laws as is crystal clear as to what the requirements for subject matter jurisdiction are there the notice is jurisdictional, it has to be done by mail or personal service, the statute does not afford the opportunity to use publication notice and that's what was done in this particular case. Judge outlaw felt that if they couldn't find the addresses, even though we believe they made no real effort to do that, the publication notice would suffice, and we argue the case was absolutely clear that that is simply a jurisdictional defect if you don't find if you don't like the notice you lose. And I would, I would argue that the case that they cite mcflaw that I've read, actually I agree with judge outlaw in that case entirely he simply said that the petitioners had no standing to finally challenge the original guardianship petition because they were not entitled to notice in the first place that when he because the disabled person, husband was alive. There were no children, and these petitioners in that case were way down the line they were never entitled to notice in the first place so that this case supports our decision to the extent that we talked about subject matter jurisdiction. With that, I would like to just close and again say that we believe that in the totality of the decision of judge outlaw was simply wrong that there was never any proof of a mental illness by clear and convincing evidence, and without that medical fact in the record by clear and convincing evidence, this judgment cannot stand. Thank you so much for your time this afternoon. Thank you. I'm sorry, I want to address your claim that there was no, they couldn't substantiate mental illness. Dr. Johnson found that there was delusional disorders social avoidant personality traumatic brain injury attention deficit sleep disorder. And then Dr. Shaw agreed with those findings and added that she had impaired executive functioning. Well, it is that Dr. Johnson is a neurologist, not a neurologist she's a neuropsychologist she's not an MD, she's a psychologist, and she conducted a series of tests, and her report indicates that the results of her tests would suggest these diagnosis but it's up to a doctor to make those diagnosis. But what's important justice is that when you look at her report, she actually states that there is actually no executive functioning deficit of any time. That's an actual direct quote from from her report, Dr. Shaw, obviously begs the differ he says that report says there is a deficit and executive functioning, and he attributes that to his decision that there is diagnosis I should say, of delusional disorder. And we simply disagree that Dr. Johnson doesn't say that. And that again is something that does not support the opinion offered by Dr. Shaw. Thank you. Thank you both counsel, you'll take this under advisement, and you can hear from us in due course. Thank you.